**[J-16-2015]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 111 MAP 2014 |
| | : |
| Appellant | : Appeal from the Order of the Superior |
| | : Court dated January 15, 2014, |
| | : Reconsideration Denied March 27, 2014, |
| v. | : at No. 91 EDA 2013 Affirming the Order of |
| | : the Court of Common Pleas of Monroe |
| | : County, Criminal Division, at No. |
| TIFFANY LEE BARNES, | : CP-45-CR-1473-2012 dated December 5, |
| | : 2012. |
| Appellee | : |
| | : ARGUED:   March 11, 2015 |

**DISSENTING STATEMENT**

**MR. JUSTICE EAKIN**                                           **FILED:   August 25, 2015**

I respectfully dissent from the per curiam affirmance of the Superior Court's order. This result affirms the proposition that a police officer's activation of overhead lights on a patrol car automatically creates an investigative detention of those in the area; if reasonable suspicion is not extant, turning on those lights is per se an unconstitutional act of detention, tainting everything that follows.   This is a head-scratchingly terrible result, which should not be given approbation by this court's affirmance.

At approximately 3:00 a.m. in a dark and rural area, a passing state trooper saw appellee pull her vehicle off the roadway and park between two auto dealerships that had long been closed for the night.   She turned off her car's lights; she did not activate her four-way blinkers.   Seeing this obviously anomalous action given the time and place, the trooper pulled behind her vehicle, activated his overhead lights, and got out to approach

on foot.   At this point, appellee got out of her vehicle, unbidden, and the officer immediately noticed strong indicia of intoxication, eventually leading to sobriety tests and a BAC test showing a level of 0.22% (nearly three times the statutory limit).

The rationale of both the trial court and Superior Court was that the use of overhead lights amounted to a seizure because it caused appellee to feel less than free to leave; as there was no articulable suspicion of criminal activity when the lights went on, the officer's actions were deemed unconstitutional.   The issue is thus whether an officer without articulable suspicion may constitutionally turn on the overhead lights before approaching a car; to affirm this suppression order, one must find the officer was not allowed to do so, on pain of violating the Constitution.

In the first place, both the Superior Court and the suppression court applied the wrong analytical standard; this fundamental error alone calls for reversal.   Both courts relied significantly on subjective testimony.   See Commonwealth v. Barnes, No. 91 EDA 2013, unpublished memorandum at 8-9 (Pa. Super. filed January 15, 2014); Suppression Court Opinion, 12/5/12, at 7 ("[T]he arresting officer has conceded that [appellee] was not free to leave once he pulled behind [her] and turned on his overhead lights.   [Appellee] also testified that she did not feel free to leave when this occurred.   We find these circumstances weigh heavily in favor of finding an investigatory detention.").   This was error.

Subjective views are immaterial to these determinations.   Commonwealth v. Lyles, 97 A.3d 298, 302 (Pa. 2014) (citation omitted).   The trial court erred in considering them as factors, and the Superior Court did as well, even after citing the proper standard: an objective test.   Under the correct analytical test, what the parties thought is irrelevant;

what must be conducted is "an objective examination of the totality of the surrounding circumstances." Id. (citing Commonwealth v. Strickler, 757 A.2d 884, 889 (Pa. 2000)). No single factor is determinative of whether a seizure occurred. Id. (citation omitted). The totality-of-the-circumstances test "ultimately center[s] on whether the suspect has in some way been restrained by physical force or show of coercive authority." Id. (citation omitted). While citing proper law, the Superior Court made no totality examination beyond the use of lights, the subjective and understandable acknowledgement by the officer that her driving away after his approach would cause him to find out why, and appellee's subjective reaction (apparently the lights specifically triggered the legal talismanic phrase, "Gosh, now I am no longer free to leave!").

Beyond the wrong standard, the syllogism of the courts below is a model of paralysis by analysis. The analysis goes like this: as appellee said she did not feel free to leave, she was subject to detention, and as the officer did not articulate a basis for detention, his action in turning on his lights was "coercive authority" without justification, violative of her constitutional rights. The paralysis is that this officer apparently had only two constitutionally permitted options: either (1) pull in behind her very quietly, so he would not alert the driver to his identity in the dark, at 3 a.m., ignoring the manifest safety risks and the likelihood of scaring the driver half to death when he popped out of the dark; or (2) ignore the vehicle altogether and go blissfully down the road thinking, "Gee whiz, I wonder what that was all about." The latter would be a dereliction of duty; the former is a good way to give the driver a heart attack or to get the officer shot.

The words "feel free to leave" are a catchphrase, a shorthand mantra when assessing whether a seizure occurred — if a reasonable innocent person would not feel

free to end the encounter and leave, there is a seizure. See, e.g., Strickler, at 889 (citation omitted). This has always been problematic in the area of traffic stops, where one is not immediately free to leave but knows that the interaction will be relatively brief, not really an arrest at all. But see Delaware v. Prouse, 440 U.S. 648, 653 (1979) ("[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of th[e Fourth and Fourteenth] Amendments, even though the purpose of the stop is limited and the resulting detention quite brief." (citations omitted)).

Here, there was no stop. If an officer's mere approach of persons not in motion were to be held inherently coercive in and of itself, analysis would be simple, but such an approach is not objectively coercive, and caselaw says so. Neither is it the law that the use of overhead lights can only be a per se, mandatory "you are under detention and no longer free to leave" order, leaving no other objective possible conclusion; yet that is what the courts below would have.

This is the mischief of subjective versus objective reaction. The subjective reaction when you are intoxicated may be "uh oh" and you properly worry about discovery and detention; when your car is disabled, the subjective reaction is "Thank goodness, help has arrived."[1] Clearly, subjective reactions, necessarily subject to many variables, cannot be the test. The objective test therefore looks more broadly, and requires more than an act that may engender entirely dissimilar reactions. Activating lights can provoke different reactions, but it does not constitute objective unconstitutional behavior that allows every accused to say "I didn't feel free to leave," thus comprising recognized

---

[1] Let us not forget that the thankful stranded motorist will seldom be in court to remind us of this alternate reaction to an officer's approach — we only hear the others. Ironically, it is the officer's approach that gives the innocent motorist hope that soon they can leave.

detention and illegality, absent articulable suspicion. Objectively, lights equal identification, and identification as an officer does not constitute coercive authority.

Thus, when the courts below concluded the use of lights comprised an investigative detention that required reasonable suspicion, they erred; the Constitution was not violated just because the officer activated his lights without suspecting criminal activity. Objectively, all this officer did was park behind appellee's vehicle with his overhead lights on. He had obvious reason to do so, but did nothing to block her vehicle. He did not restrain her movement or interrupt her travels. He did not cause her to pull over, and he did not direct her to her chosen stopping place, a gravel pull-out between two closed businesses at three o'clock in the morning. He did not brandish a weapon or do anything else to show force. He did not give her orders. The use of the overhead lights was the single objective factor bearing on the alleged unconstitutionality of the officer's actions. That this is found to be a constitutional violation indicates the myopic nature of the subjective "I didn't feel free to leave so I was illegally detained" analysis applied here.

There being no other objective factors before appellee exited her car and demonstrated her intoxication, let us consider the use of the overhead lights. The lights served two obvious and significant purposes. First, the lights were turned on for everyone's safety, alerting other motorists to their roadside presence in the middle of a dark, rural night. N.T. Pre-Trial Hearing, 6/22/12, at 10 ("I wanted to be visible at that point for our safety in case other vehicles came down that road."). Second, the officer's overhead lights identified him as a police officer, whose sudden and otherwise unidentified appearance in an unlit and empty area in the wee hours of the morning would likely create considerable fear in the occupants of the vehicle.

However, according to the courts below, a reasonable citizen must apparently ignore these legitimate and justified reasons for the lights. Instead of thinking, "Oh, thank goodness, that car isn't a rapist; it's an officer — and good, he's got his lights on for safety," the single objective conclusion a reasonable innocent person is permitted to make is that if the lights go on, they are being detained. But see Commonwealth v. Johonoson, 844 A.2d 556, 562 (Pa. Super. 2004) ("It is one traditional function of State Troopers, and indeed all police officers patrolling our highways, to help motorists who are stranded or who may otherwise need assistance. Such assistance is to be expected, and is generally considered welcome."). Given the utility of the lights in identifying the approaching officer, and keeping the officer, appellee, and all passing motorists safe, it is unreasonable to find engaging the overhead lights escalated this encounter into an investigatory detention. See Commonwealth v. Au, 42 A.3d 1002, 1008 (Pa. 2012) ("In terms of the use of the arresting officer's headlights and flashlight [to illuminate the parked vehicle], this was in furtherance of the officer's safety, and we conclude it was within the ambit of acceptable, non-escalatory factors.").

Suppression is primarily a tool to deter illegal governmental actions — denying the government the fruits of illegal searches or seizures. However, suppression is not a reward for those who sell truncated analysis that weaves leaden facts into syllogistic gold. If you cannot point to the officer's conduct and say "Here is a forbidden, illegal act," suppression will not lie. I cannot in good faith point to such a place here. Where was the illegality? Did the officer somehow run afoul of the law by stopping to check on this car? Can it really be that the officer's use of overhead lights was unconstitutional

behavior?   Can one explain to a citizen exactly what this officer did wrong, what act precluded prosecution of this case?   Can one do so looking them in the eye?

Every once in a while, courts must step back from talismanic phrases and look at the reality of what is being announced as the law.   If the officer acted illegally here, every officer in the Commonwealth stands to violate the Constitution every night, and this simply can never be the law.   This officer acted completely reasonably and did not violate appellee's constitutional rights, and courts should not simply parrot snippets of analysis, creating a result that is both myopic and illogical.

As this decision should not stand, I cannot join the per curiam decision affirming it.

Mr. Justice Stevens joins this dissenting statement.