**[J-70-2019] [MO: Saylor, C.J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 39 EAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court entered on June 11, 2018 at |
| | : | No. 1567 EDA 2017 reversing the |
| v. | : | Order entered on April 20, 2017 and |
| | : | remanding to the Court of Common |
| | : | Pleas, Philadelphia County, Criminal |
| HAROLD COST, | : | Division at No. CP-51-CR-0009310- |
| | : | 2015. |
| Appellant | : | |
| | : | ARGUED: September 11, 2019 |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                    **DECIDED: January 22, 2020**

In *Commonwealth v. Au*, 42 A.3d 1002 (Pa. 2012), this Court held an "arresting officer's request for identification" in light of the totality of circumstances[1] "did not transform his encounter . . . into an unconstitutional investigatory detention." *Id.* at 1009. We affirmed this rule in *Commonwealth v. Lyles*, 97 A.3d 298 (Pa. 2014), when we held "*Au's* limited premise is nothing new - it merely supported and reaffirmed well-settled principles allowing officers to request identification without any level of suspicion, and holding that a request alone does not constitute an investigative detention or seizure." *Id.* at 304 (citations omitted).[2] This Court explained that "[n]otwithstanding [this] general

---

[1] The Court considered that the officer did not activate the emergency lights on his vehicle, did not position his vehicle to block the car Au was seated in, did not brandish a weapon, did not make intimidating movements or an overwhelming show of force, did not make a threat or command, and did not speak in an authoritative tone.

[2] In *Lyles*, this Court considered the following factors:

principle, an encounter involving a request for identification could rise to a detention when coupled with circumstances of restraint of liberty, physical force, show of authority, or some level of coercion beyond the officer's mere employment, conveying a demand for compliance or that there will be tangible consequences from a refusal." *Id.* Because the factors giving rise to a detention set forth in *Lyles* were not present in this matter, I would affirm the Superior Court's order reversing suppression.

The Majority notes that in this case, "the question of whether Appellant was subject to an investigative detention at the relevant time is a close one[.]" Maj. Op. at 20. I agree. In *Lyles*, this Court rejected the assertion that by writing down the information from Appellant's identification card the encounter had escalated to an investigative detention. Herein, the majority notes "the retention by police of an identification card to conduct a warrant check will generally be a material and substantial escalating factor within the totality assessment." Maj. Op. at 17. Herein, the record indicates the officers "jotted down everybody's name and date of birth that they gave, and their address[,]" and that the

---

The request was not accompanied by physical restraint, manifestation of authority, or a mandate to comply. The officer simply asked for appellant's identification; he did not demand it or require acquiescence, and appellant gave it to him voluntarily. The officer did not express dissatisfaction with appellant's reply or tell appellant he was not free to leave. There is no evidence appellant was confined or prevented from departing, or that the officer impeded his movement in any way, as the interaction took place on a public street in broad daylight. There was no evidence the officer brandished a weapon or threatened appellant or that the interaction was *per se* coercive or intimidating. There is no record of the officer displaying an aggressive demeanor or using an authoritative tone suggesting there would be negative consequences if appellant failed to identify himself; he did nothing more than request appellant's identification. Had there been no repetitive furtive conduct by appellant, there is no reason to think the encounter would not have terminated promptly once the officer recorded the minimal information he requested.

*Lyles*, 97 A.3d at 306.

officers' ran the identification information through dispatch over their radio. N.T., 4/20/17, at 33, 42. In my view, this factor is analogous to *Lyles*, and did not escalate the encounter to an investigative detention. The *Lyles* Court held, "we do not find the officer's brief recording of the card's information raised the encounter to an investigative detention. Quickly jotting down the information as opposed to attempting to memorize it, did not restrain appellant's freedom of movement." *Id.* at 306. The *Lyles* Court did note "[t]he officer did not question appellant further while he was holding the identification, and he did not use appellant's information to run a background check." *Id.* at 306. Nevertheless, questioning the appellant further or running a background check are factors to be considered in the totality of the circumstances and are not determinative on their face. *See id.* at 304 (holding that although cases like *Au* and *Lyles* "may serve as guideposts, a suppression court must independently employ the totality-of-the-circumstances test in determining whether a seizure occurred").

Viewing the totality of the circumstances present in this case, as we must, I am unpersuaded that the interaction between Appellant and the officers escalated to the level of an investigative detention. Ultimately, the Majority deems two factors as sufficient evidence Appellant was not free to proceed about his business: the retention of Appellant's identification card to conduct a warrant check and the officer's question whether there was anything in the backpack he needed to know about. *Id.* at 18. These two factors, in light of the totality of circumstances do not constitute the restraint of liberty, physical force, a show of authority, coercion, or demand for compliance our well-established case law has prescribed. During the officers' encounter with Appellant, Appellant proceeded to move his backpack, to which the officer inquired, "[Y]ou have anything in that backpack I need to know about?" N.T., 4/20/17, at 10. Appellant volunteered that he had a gun. *Id.* The officers testified they never removed their service

weapons from their holsters or indicated the men were not free to leave. The officers' did not activate sirens or lights, and they did not block the entrance to the alleyway. *Id.* at 13. Today's holding is a departure from the totality of the circumstance assessments in *Au* and *Lyles*, and represents a shift towards creating a *per se* rule that once an officer has possession of an individual's identification card, the encounter has escalated to an investigative detention. Based on precedent, I do not agree with this shift and would affirm on the basis of *Au* and *Lyles*. Accordingly, I dissent.