J-S06029-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LORNA ELIZABETH CARLSON | : | |
| | : | |
| Appellant | : | No. 935 MDA 2022 |

Appeal from the Judgment of Sentence Entered June 23, 2022
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s): CP-21-CR-0001208-2021

BEFORE: STABILE, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.: **FILED: MAY 22, 2023**

Appellant Lorna Elizabeth Carlson appeals from the judgment of sentence imposed after she was found guilty of two counts of driving under the influence (DUI). Appellant contends that the trial court erred when it denied her motion to suppress. We affirm.

The trial court summarized the relevant facts of this matter as follows:

Officer Thomas Wambold testified at [Appellant's] suppression hearing that on July 3, 2020, he was driving in his patrol car in Cumberland County when he observed Appellant drive past him in the opposite direction. Appellant had a "lethargic gaze to her," and he had to "scoot over" in the road to let her pass by him without striking his vehicle on the narrow street. Officer Wambold described [Appellant] as appearing "almost like she didn't even notice [him] there," explaining that she did not slow down to pass by and held the unusual gaze which appeared to him like she was struggling to keep her eyes open. He said his vehicle and Appellant's vehicle were only about a foot apart from each other, so he could see her very closely. He said in his experience,

_____

[*] Former Justice specially assigned to the Superior Court.

intoxicated drivers appear this way with a slouch, head tilted to the side, and a thousand-yard stare, though he did not know whether she was impaired, having some other type of medical issue, or if she was falling asleep at the wheel. Officer Wambold, admittedly wanting to investigate, turned his vehicle around, followed her, and observed her park her vehicle which he said took several attempts and included her vehicle going over the curb and abruptly coming back down on the road and finally parking over a foot from the curb. He said he did not turn on his lights or sirens, nor yell out to her or indicate in any way that she needed to pull over; Appellant was parking her vehicle unprompted. Officer Wambold was alone, as was Appellant. He said he attempted a mere encounter, whereby he stopped his vehicle in the road as Appellant was getting out of her vehicle unprompted[,] and he approached her on foot without any show of authority. Officer Wambold testified that as he approached Appellant while Appellant was exiting her vehicle, he said, "how are you doing? Are you ok?" As he approached, the officer said he immediately smelled alcohol on her breath and at that point called out a "suspicious vehicle" over his radio on his person. He described the smell of alcohol and his calling in a "suspicious vehicle" as simultaneous, explaining[:]

> I smelled the alcohol pretty much -- it was very quickly. It was just as she was getting out of the vehicle, I could smell the overwhelming strong odor of an alcoholic beverage.

The officer testified that while making the radio call, he also observed unsteady coordination in Appellant "like a stagger." Officer Wambold's motor vehicle recording, which does not capture sound for the relevant portion, is consistent with his testimony, showing Officer Wambold walk up to Appellant after she has already parked and as she is standing outside her vehicle. Appellant closes her door and walks toward Officer Wambold and gestures toward her vehicle as the pair speak until, a few seconds later, Officer Wambold walks back toward his vehicle. At that time, he turns on his emergency lights for the first time.

Trial Ct. Op., 9/7/22, at 2-4 (footnotes omitted and some formatting altered).

The record reflects that Appellant performed poorly on field sobriety tests, and Appellant was taken for a blood draw which revealed her blood alcohol

concentration was .244% within two hours of driving. *See* Complaint, 7/3/20, at 2. Appellant was charged with DUI (general impairment), DUI (highest rate of alcohol), and careless driving.[1] Trial Ct. Op., 9/7/22, at 1.

On August 19, 2022, Appellant filed her omnibus pretrial motion asserting that the traffic stop was unlawful and arguing that any evidence gathered from the traffic stop must be suppressed. Omnibus Mot., 8/19/22, at 5-11 (unnumbered). The trial court held a hearing on October 5, 2021, and took the matter under advisement. *See* N.T., 10/5/21, at 52.

On February 11, 2022, the trial court denied Appellant's motion to suppress, and on April 13, 2022, the trial court held a trial on stipulated facts. On April 25, 2022, the trial court found Appellant guilty of DUI (general impairment) and DUI (highest rate of alcohol), and not guilty of careless driving. *See* Trial Ct. Op., 9/7/22, at 1. On May 31, 2022, the trial court concluded that Appellant's DUI convictions merged for sentencing purposes, and the court sentenced Appellant on the count of DUI (highest rate of alcohol) to a term of seventy-two hours to six months of incarceration, a $1,000.00 fine, and court costs and fees. *See* Order, 5/31/22, at 1. On June 23, 2022, the trial court filed an amended sentencing order which modified Appellant's conditions of bail and added drug and alcohol testing. Order, 6/23/22.

_____

[1] 75 Pa.C.S. §§ 3802(a)(1); 3802(c); and 3714.

Appellant filed a timely notice of appeal, and both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issue:

Whether the honorable trial court erred in concluding that the officer's initial interaction with [Appellant] was a mere encounter. More specifically, whether [Appellant] was subjected to an investigative detention during the initial interaction thereby requiring reasonable suspicion?

Appellant's Brief at 6 (formatting altered).

Appellant argues that the trial court erred in denying her motion to suppress. Appellant's Brief at 15. Specifically, Appellant contends that the trial court erred when it concluded that Officer Wambold's initial interaction with Appellant was a mere encounter, and she instead claims that the officer conducted an investigative detention that was not supported by reasonable suspicion. *Id.* at 15-19, 22.

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010).

Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. The suppression court's legal conclusions are not binding on an appellate court, whose duty it is to determine if the suppression court properly applied the law to the facts. Thus, the conclusions of law of the courts below are subject to our plenary review.

*Commonwealth v. Shreffler*, 201 A.3d 757, 763 (Pa. Super. 2018) (citation

omitted).

> It is well settled that

> Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures.  Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police.  The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop or respond.  The second, an "investigative detention," permits the temporary detention of an individual if supported by reasonable suspicion.  The third is an arrest or custodial detention, which must be supported by probable cause.

*Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

> No bright lines separate these types of encounters, but the United States Supreme Court has established an objective test by which courts may ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter.  The test, often referred to as the "free to leave test," requires the court to determine "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'"  [*Florida v.*] *Bostick,* 501 U.S. [429,] at 437 [(1991)].  "Whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."  *Terry* [*v. Ohio*,] 392 U.S. [1,] 16 [1968)].

*Commonwealth v. Adams*, 205 A.3d 1195, 1200 (Pa. 2019) (some citations

omitted and formatting altered).  "In evaluating the level of interaction, courts

conduct an objective examination of the totality of the surrounding

circumstances."  *Lyles*, 97 A.3d at 302 (citation omitted).

In **Commonwealth v. Au**, 42 A.3d 1002 (Pa. 2012), our Supreme Court addressed a situation with similar facts and concluded that the initial interaction between law enforcement and a defendant constituted a mere encounter. In **Au**, during the early morning hours, a police officer witnessed a car parked at a business that was closed at the time. The officer concluded that this was unusual, and he entered the parking lot and parked his car behind the vehicle illuminating the passenger side of the car, but not blocking the vehicle from exiting the parking lot. Additionally, the officer did not activate his emergency lights. The officer then exited his patrol vehicle and approached the parked car on foot. The officer observed that there were six people in the car and asked the defendant, who was the driver of the car, "what's going on[?]" **Id.** at 1003. The driver replied that they were "hanging out." **Id.** The officer determined that the passengers in the backseat of the vehicle were under eighteen years old, and he asked the driver for identification. The driver then opened the glove compartment in the car and revealed two baggies of marijuana. There was no evidence of criminal activity or a violation of the Motor Vehicle Code prior to the driver opening the glove compartment. **Id.** at 1004. Following a search of the car, the police discovered additional controlled substances. The police arrested the driver, and the driver filed a motion to suppress evidence of the controlled substances. The trial court concluded that the initial interaction between the officer and the driver was an investigative detention, which was unsupported by reasonable suspicion, and the trial court suppressed the evidence. **Id.**

On direct appeal, this Court affirmed the trial court's ruling. *See Commonwealth v. Au*, 986 A.2d 864 (Pa. Super. 2009) (*en banc*). The Pennsylvania Supreme Court granted allowance of appeal, and after review, it reversed. The Supreme Court held that the police officer's interaction with the driver was a mere encounter and explained, in relevant part, as follows:

> In the present case, the arresting officer's unrebutted testimony indicates that he did not: activate the emergency lights on his vehicle; position his vehicle so as to block the car that [the driver] was seated in from exiting the parking lot; brandish his weapon; make an intimidating movement or overwhelming show of force; make a threat or a command; or speak in an authoritative tone.
>
> * * *
>
> Pursuant to governing Fourth Amendment law, we hold that the arresting officer's request for identification did not transform his encounter with [the driver] into an unconstitutional investigatory detention.

*Au*, 42 A.3d at 1008–09 (Pa. 2012) (citations omitted and formatting altered).

As stated previously, in this case, the trial court concluded that the interaction between Officer Wambold and Appellant was a mere encounter. Trial Ct. Op., 9/7/22, at 4. The trial court reviewed the evidence and explained that Officer Wambold did not conduct a traffic stop, and it noted that the "pivotal" inquiry was whether "a reasonable [person], innocent of any crime," would believe that they were being restrained. *See id.* at 4 (citing *Commonwealth v. Livingstone*, 174 A.3d 609, 621 (Pa. 2017) (quoting *Commonwealth v. Jones*, 378 A.2d 835, 840 (Pa. 1977)).

The trial court explained that Officer Wambold testified that when he first saw Appellant driving, she had a "lethargic gaze," appeared to be struggling to keep her eyes open, and had a "thousand-yard stare," causing the officer to be concerned that Appellant may be impaired or experiencing a medical emergency. Trial Ct. Op., 9/7/22, at 2. Indeed, the trial court acknowledged that the officer wanted to investigate, and the officer began to follow Appellant's car. *See id.* Appellant then parked her car, without being prompted or directed by the officer, and when the officer approached Appellant he smelled the odor of alcohol. *See id.* at 2-3. The trial court concluded that Appellant was not restrained and that the initial interaction was a mere encounter.

After review, we discern no error. Although Officer Wambold testified that he suspected that Appellant may be impaired due to her appearance and expressed his subjective intent to investigate, those factors alone do not raise the level of the initial interaction to an investigative detention as that determination is not based on any single factor, but rather on the totality of the circumstances. *See Lyles*, 97 A.3d at 302-03. The *Lyles* Court explained:

> The totality-of-the-circumstances test is ultimately centered on whether the suspect has in some way been restrained by physical force or show of coercive authority. Under this test, no single factor controls the ultimate conclusion as to whether a seizure occurred—to guide the inquiry, the United States Supreme Court and this Court have employed an objective test entailing a determination of whether a reasonable person would have felt free to leave or otherwise terminate the encounter.

*Id.* (citing ***Michigan v. Chesternut***, 486 U.S. 567, 573–74 (1988); ***Commonwealth v. Strickler***, 757 A.2d 884, 889 (Pa. 2000)).

Instantly, Officer Wambold turned his car to follow Appellant after she drove past him with a "lethargic gaze," slumped back, without slowing down on a tight street such that the officer had to move his vehicle over on the road to avoid hitting Appellant's vehicle. He saw Appellant drive over a 4.5-inch curb while attempting to park, and she parked more than 12 inches from the curb. Trial Ct. Op., 9/7/22, at 2-3, 5. The trial court further considered that Officer Wambold parked behind Appellant's car but did not block her exit. He was the only law enforcement officer present, it was daylight, and he did not activate his emergency lights or siren prior to speaking to Appellant. ***See id.*** Officer Wambold exited his vehicle, walked toward Appellant's car, and he asked Appellant if she was "ok." ***Id.*** The officer did not make any show of authority or force, nor did he make "any demands on Appellant," or request Appellant to do "anything at all." ***Id.*** Appellant was not restrained and was free to leave. Then, voluntarily, without any prompting, Appellant exited her car, walked toward the officer, and engaged in conversation. ***See id.*** It was at that point that Officer Wambold smelled alcohol on Appellant's breath and then used his radio to report the encounter as an investigation of a suspicious vehicle. Officer Wambold witnessed Appellant stagger, and he then walked back to his patrol vehicle and activated the emergency lights. ***See id.*** at 3, 4-5.

On this record, we agree with the trial court that based on Appellant's observed behavior, Officer Wambold believed that Appellant might have been impaired, experiencing a medical emergency, or was falling asleep at the wheel. Accordingly, he did not need to demonstrate a level of suspicion to approach Appellant to determine her condition and if she needed assistance. *See Commonwealth v. Williams*, 73 A.3d 609, 613 (Pa. Super. 2013) (explaining that police need no level of suspicion to approach an individual and initiate a mere encounter or request for information). Therefore, considering the totality of the circumstances, Officer Wambold's initial interaction with Appellant was a mere encounter. As the trial court noted, after Officer Wambold smelled alcohol on Appellant, and observed further behavior of Appellant including her staggering walk, he radioed that he was investigating a suspicious vehicle and activated his emergency lights and Appellant was subsequently detained for suspicion of DUI. *See id.* at 4, 5, 6. On this record, we find Appellant's arguments challenging the lawfulness of the traffic stop as meritless and no relief is due. For these reasons, based on the totality of the circumstances of this case, we conclude that the trial court's denial of Appellant's suppression motion was supported by the record and free of legal error, therefore we affirm Appellant's judgment of sentence. *See Shreffler*, 201 A.3d at 763; *Lyles*, 97 A.3d at 303.

Judgment of sentence affirmed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/22/2023