J-S38029-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MICHAEL HOLLY | |
| Appellant | No. 2022 MDA 2014 |

Appeal from the Judgment of Sentence October 17, 2014
In the Court of Common Pleas of Dauphin County
Criminal Division at No: CP-22-CR-0000108-2014

BEFORE:  WECHT, MUSMANNO, and STABILE, JJ.

MEMORANDUM BY STABILE, J.:　　　　　　　　**FILED DECEMBER 10, 2015**

Appellant, Michael Holly, appeals from the judgment of sentence entered October 17, 2014 for his convictions of two counts of unlawful possession of a controlled substance.[1]  Upon review, we affirm.

Appellant was charged with, *inter alia*, possession of cocaine and possession of heroin.  On September 3, 2014, Appellant moved to suppress "all drugs and drug paraphernalia and statements of [Appellant]" that were obtained as a result of using the key fob taken from Appellant's person during "illegal searches" by State Parole Officer (PO) Michael Welsh. Appellant's Motion to Suppress Evidence, 9/3/14, at 23.  The trial court held a suppression hearing on September 17, 2014, at which the Commonwealth presented the testimony of Officer Anthony Fiore and PO Welsh.

_____
[1] 35 P.S. § 780-113(a)(16).

1

Based on the testimony given at the suppression hearing, the trial court denied Appellant's motion to suppress. The case proceeded to trial following which a jury convicted Appellant of two counts of unlawful possession based on the cocaine and heroin found in the Hyundai that PO Welsh accessed after taking a key fob from Appellant's person that allowed entry into the vehicle.[2] The trial court sentenced Appellant to an aggregate term of incarceration of twenty-eight to fifty-six months in a state correctional institution along with costs totaling $100. Trial Court Opinion (TCO), 5/15/15, at 1. Appellant timely filed a post-sentence motion, which the trial court denied on October 30, 2014.

On November 28, 2014, Appellant timely filed a notice of appeal and, subsequently, complied with the trial court's order to file a Pa.R.A.P. 1925(b) statement. In his Rule 1925(b) statement, Appellant alleged, *inter alia*, that the trial court erred in denying his motion to suppress because neither Officer Fiore's **Terry**[3] stop nor PO Welsh's personal and property search of Appellant were based on reasonable suspicion. Appellant's Rule 1925(b) Statement, 2/18/15, at 1.

In its Pa.R.A.P. 1925(a) opinion, the trial court found that both Officer Fiore's **Terry** stop and PO Welsh's search of Appellant's person and property were based on reasonable suspicion. TCO, 5/15/15, at 7-13. The trial court

---

[2] The jury acquitted Appellant of possession with intent to deliver cocaine and of possession with intent to deliver heroin. 35 P.S. § 780-113(a)(30).

[3] **Terry v. Ohio**, 392 U.S. 1 (1968).

held that PO Welsh "properly exercised his authority as a parole officer" in searching Appellant's person, because "Appellant was running from the area of a reported mob of people some of whom may have been armed" and because "[o]nce PO Welsh discovered Appellant was under state supervision the actions of Appellant and [the circumstances] surrounding the encounter provided enough reasonable suspicion to pat him down pursuant to 61 Pa.[]C.S.A. §[]6153(d)." *Id.* at 12-13.

On appeal, Appellant raises three issues for our review:

I. Whether the trial court erred in denying Appellant's suppression motion where police officers conducted a suspicionless investigative detention and **Terry** frisk of Appellant and parole officers conducted a suspicionless personal and property search of Appellant in violation of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution?

II. Whether the trial court erred in denying Appellant's Post-Sentence Motion for Modification of sentence where Appellant's sentence is excessive and unreasonable in light of Appellant's rehabilitative needs as the punitive measures inherent in the sentencing scheme could have been accomplished by the imposition of a lesser sentence?

III. Whether the trial court erred in denying Appellant's Post-Sentence Motion for Arrest of Judgment where Appellant's convictions were against the weight of the evidence so as to shock one's sense of justice as Appellant was never shown to have possessed the controlled substances in question?

Appellant's Brief at 8.

Where a trial court denies a motion to suppress,

An appellate court's standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record

3

as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

***Commonwealth v. Smith***, 85 A.3d 530, 534 (Pa. Super. 2014). Our Supreme Court has clarified that the scope of appellate review is limited to the evidence produced at the suppression hearing—not the entire record. ***In the Interest of L.J.***, 79 A.3d 1079 (Pa. 2013).

> Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures. Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police. The first, a "mere encounter," does not require any level of suspicion or carry any official compulsion to stop or respond. The second, an "investigative detention," permits the temporary detention of an individual if supported by reasonable suspicion. The third is an arrest or custodial detention, which must be supported by probable cause.

***Commonwealth v. Lyles***, 97 A.3d 298, 302 (Pa. 2014) (citing ***Commonwealth v. Smith***, 836 A.2d 5, 10 (Pa. 2003)).

Mindful of our standard of review, and after a careful reading of the record and analysis of the applicable law, we agree with the well-reasoned conclusions of the trial court and adopt its May 15, 2015 Rule 1925(a) opinion as the decision of this Court. We direct that a copy of the trial court's May 15, 2015 Rule 1925(a) opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/10/2015



COMMONWEALTH OF PENNSYLVANIA : IN THE COURT OF COMMON PLEAS
: DAUPHIN COUNTY, PENNSYLVANIA
v.                                     :
: NO.: 0168 CR 2014
:
MICHAEL HOLLY                          : (2022 MDA 2014)

## MEMORANDUM OPINION

Appellant, Michael Holly ("Appellant") is appealing this Court's judgment of
sentence entered October 17, 2014. This opinion is written pursuant to Pa.R.A.P.
1925(a).

## PROCEDURAL HISTORY

Following a jury trial held on September 18-19, 2014, Appellant, Michael Holly,
was found guilty of two counts of Unlawful Possession of a Controlled Substance.[1]
Appellant was sentenced on October 17, 2014, to an aggregate term of incarceration of
twenty-six (28) to fifty-six (56) months in a state correctional institution along with the
payment of the costs of prosecution and fines totaling $100. Appropriate time credit
was applied.

Appellant's timely Post-Sentence Motion challenged the amount of the fine
imposed as excessive and unreasonable and requested a new trial or arrest of
judgment contending that the verdict rendered was against the weight of the evidence.
The Post-Sentence Motion was denied by this Court on October 29, 2014. On
November 28, 2014, Appellant filed a timely Notice of Appeal to the Pennsylvania
Superior Court. In compliance with this Court's Order directing the filing of a Concise

---
[1] 35 P.S. §780-113(a)(16).

7-20

Statement of Matters Complained of on Appeal, Appellant raises the following issues for review:

> 1. The trial court erred in denying Appellant's suppression motion where police officers conducted a suspicionless investigative detention and *Terry* frisk of Appellant and parole officers conducted a suspicionless personal and property search of Appellant in violation of Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution.
>
> 2. The trial court erred in denying Appellant's *Batson* challenge where the Commonwealth struck African-American jurors based on their race.
>
> 3. The trial court erred in denying Appellant's Post-Sentence Motion for Modification of Sentence where Appellant's sentence is excessive and unreasonable in light of Appellant's rehabilitative needs. The putative measures inherent in the sentencing scheme could have been accomplished by the imposition of a lesser sentence.
>
> 4. The trial court erred in denying Appellant's Post-Sentence Motion for Arrest of Judgment where Appellant's convictions were against the weight of the evidence so as to shock one's of justice as Appellant was never shown to have possessed the controlled substances in question.

For the reasons set forth below, this Court finds that Appellant's judgment of sentence should stand.

## FACTUAL BACKGROUND

The suppression hearing and jury trial held on September 18-19, 2014, established the following facts: On June 4, 2013, at 11:43 p.m., Officer Anthony Fiore ("Officer Fiore") of the Harrisburg Bureau of Police ("HBP") responded to a radio call reporting an unruly crowd in the Hall Manor public housing project involving approximately 30 people some of whom had guns. He was partnered with Officer Christopher Thomas on the night of the incident. The 911 caller indicated that the unruly crowd was located near 18 Row of Hall Manor. Based on radio transmissions

2

from officers who had arrived on the scene prior to Officer Fiore, he learned that a smaller group broke from the crowd and fled was fleeing south across a field in the middle of the housing units. Officer Fiore and his partner proceeded to the southern area of the units to ascertain what was going on especially since the radio dispatch reported gun involvement. He stated that when he saw the group fleeing, it was consistent with the radio reports of a crime so, he pursued them to prevent potential suspects and evidence from getting away. Officer Fiore testified to his great concern for officer safety due to the high crime/high violence/high drug atmosphere of Hall Manor.

At the southern end of Hall Manor, the officers spotted a group of approximately six persons running between Rows 47-51 as they entered the area from the south side of Hall Manor. They focused on two individuals who split from the group. The officers shined the spotlight on two individuals, announced themselves as police officers and commanded them to stop. Appellant turn and ran towards Rows 38-40 then after numerous verbal commands, he stopped for Officer Fiore. Officer Fiore informed him that he was not free to leave, handcuffed him and told him to lie on the ground. Appellant was subjected to a plain feel *Terry frisk*[2] for weapons. During his testimony, Officer Fiore conceded that Appellant was held under an investigatory detention. Appellant cooperated and no contraband was found.

In accordance with standard protocol, State Parole Officer Michael Welsh ("PO Welsh") was at the scene with HBP Officer Joshua Hammer ("Officer Hammer") of the Street Crimes Unit ("SCU") as back up for Officer Fiore. That evening, PO Welsh had

---

[2] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1969).

been partnered with Officer Hammer while SCU was on patrol. Appellant asked PO Welsh to retrieve his wallet for the purpose of checking his identification so he could move on from the interaction. Officer Fiore used Appellant's identification to check for outstanding warrants while PO Welsh and Officer Hammer remained with Appellant. No outstanding warrants were found. Officer Fiore removed Appellant's handcuffs and informed him that he was free to leave, thereby ending the police contact with him.

At this point in time, PO Welsh commenced a parole contact with him. PO Welsh's caseload comprises at risk parolees including violent criminals, firearms offenders and drug offenders. Based on his authority as a parole officer, he routinely makes contact with and pats down parolees to investigate for possible parole or probation violations even if the individual is not under his supervision.

When PO Welsh retrieved Appellant's identification from his wallet, he observed a piece of paper which he recognized to be a carbon copy of a form listing the instructions given to parolees by the Commonwealth Board of Probation and Parole. This paper signaled to PO Welsh that Appellant was on parole so, he conducted a pat down search.

The search of Appellant revealed marijuana in the front pocket of his hooded sweatshirt. PO Welsh placed Appellant in handcuffs for the purpose of detaining him to prevent him from running or turning on him while he continued a search of his person. He found a car key and fob in his front left pants pocket. When questioned about the location of the vehicle that the key operated, Appellant said that he does not have a car.

4

When asked for the location of the car that was connected to fob, he said it was across town.

PO Welsh activated the key fob in a manner that would unlock a vehicle and the tail lights on a Hyundai car approximately 15 feet away flickered. PO Welsh asked Appellant if he had a problem with him going into the car to which he responded, again, that it was not his car. While Officer Hammer waited with Appellant, PO Welsh opened the driver's side of the vehicle to search for technical parole violations. While conducting what he described as a wingspan search he noticed a console under the car radio. He pushed a button on the console which opened the compartment to reveal baggies containing suspected illegal narcotics. PO Welsh described what he found as a golf ball sized package containing a yellowish substance and several colored, smaller baggies. As PO Welsh suspected that the substances were crack cocaine and heroin, he requested Officer Fiore's assistance who confirmed his suspicion. PO Welsh relinquished his contact so Officer Fiore could remove the contraband from the car. Officer Hammer *Mirandized*[3] Appellant placed him under arrest.

While Officer Hammer transported Appellant to central booking, Officer Fiore continued his investigation of the scene. The contraband field tested positive as base cocaine and heroin; however, no drug paraphernalia was found in the vehicle. Based on the vehicle registration, Officer Fiore determined that it was registered to Appellant's sister, Jamilaha Holly.

---

[3] Miranda v. Arizona, 684 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5

Upon his arrival a central booking, Officer Fiore verbally **Mirandized** Appellant again without resistance or incident and had him sign a written waiver stating that his rights had been read to him. Appellant consented to speaking with police and ultimately provided a written statement. During the conversation, Appellant confirmed that his sister owned the car but, stated orally and confirmed in writing that the drugs were not hers.

At trial, Nicole Blascovich ("Ms. Blascovich") of the Pennsylvania State Police ("PSP") crime lab was presented by the Commonwealth as an expert witness. Ms. Blascovich testified to her expert opinion regarding the results of the laboratory testing conducted on the substances found in the vehicle. The narcotics found in the vehicle tested positive as cocaine base and heroin. The substances weighed as follows: 6.91 grams of cocaine base and each single glassine bag contained .14 grams of powdered heroin.

The Commonwealth also presented Chief John Goshert ("Chief Goshert"), chief detective of the Dauphin County District Attorney's Office as an expert in the area of street level drug trafficking. When presented with the facts surrounding the encounter and arrest of Appellant and the recovery of the illegal drugs, he testified to a reasonable degree of certainty regarding his opinion as to whether the drugs had been possessed with the intention to sell them. The factors considered by Chief Goshert included: the high drug/high crime area where the drugs were recovered; the weight/amount of the drugs and the corresponding street value; the lack of drug paraphernalia in the car; the packaging; and, the relatively large amount of drugs and dollar value in light of the fact

6

that Appellant was unemployed. He rendered an opinion that both the cocaine and heroin were possessed by Appellant for the purpose of selling them.

Appellant presented the testimony of William Crawford ("Mr. Crawford") who had been his employer at Crawdaddy's restaurant. Mr. Crawford testified that Appellant had worked for him for approximately one year while the restaurant was located at 306 Reily Street in Harrisburg. However, once the restaurant closed in August 2013 for relocation, Appellant ceased working for him and did not respond to Mr. Crawford's calls to return to work upon reopening in October 2013. Mr. Crawford stated that he was aware that Appellant worked part time for Giant Foods grocery store as he had worn his uniform to Crawdaddy's a few times. He testified that he never heard from him again after the business relocation.

## DISCUSSION

In his first issue, Appellant claims that this Court erred in denying his suppression motion. The Superior Court has long held that the review of the trial court's denial of a suppression motion is limited to determining whether the record supports the trial court's findings of fact and whether the trial court erred in its legal conclusions. Commonwealth v. Enick, 70 A.3d 843, 845 (Pa. Super. 2013) *appeal denied,* 85 A.3d 482 (Pa. 2014) *citing* Commonwealth v. Baker, 24 A.3d 1006, 1015 (Pa.Super. 2011), *appeal granted,* 613 Pa. 507, 35 A.3d 3 (2012) *aff'd* 621 Pa. 401 (Pa. 2013). "Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." *Id.* If the

7

record supports the trial court's findings of fact, we will reverse only if the trial court's legal conclusions are incorrect. *Id.*

In the instant case, the Appellant is challenging this Court's ruling on the warrantless ***Terry frisk*** conducted by Officer Fiore, and Parole Officer Welsh's warrantless search of his person and the vehicle. For the reasons set forth below, this Court finds that the suppression motion was properly denied as the requisite reasonable suspicion was present to support the searches conducted by Officer Fiore and PO Welsh.

First, we will address the search by Officer Fiore. In Pennsylvania it is well established that there are three levels of interaction between police and individuals which require differing levels of suspicion in order for the interaction to be lawful:

> "The first is a mere encounter, which need not be supported by any level of suspicion. The second is an investigative detention, which must be supported by reasonable suspicion. This interaction subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. The third category, a custodial detention, must be supported by probable cause. The police have probable cause where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. Commonwealth v. Caban, 60 A.3d 120, 127 (2012) (internal citations and quotation marks omitted).

> In order to justify a pat-down search, or Terry stop, the officer must have reasonable suspicion, under the totality of the circumstances, that criminal activity is afoot and that "the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others." *Terry,* 392 U.S. at 24, 88 S.Ct. 1868; *Commonwealth v. Guzman,* 44 A.3d 688, 693 (Pa.Super. 2012). "The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence." *Commonwealth v. Simmons,* 17 A.3d 399, 403 (Pa.Super. 2011)."

8

Commonwealth v. Guess, 2012 PA Super 196, 53 A.3d 895, 901 (2012). The reasonable suspicion must be based upon objective, articulable facts viewed in light of the totality of the circumstances presented to the officer at the time of the search. Commonwealth v. Carter, 105 A.3d 765, 768-769 (Pa. Super. 2014).

On the evening in question, Office Fiore was called to a scene described by dispatch as a large unruly crowd of about 40 people, some of whom had firearms. (Notes of Testimony, Suppression at 6-7) ;[4](Notes of Testimony, Trial at 34).[5] Notably, the incident was taking place in the Hall Manor public housing project that is well known by law enforcement as a high crime/high drug/high violence community. Id. When Appellant was initially observed, he was fleeing the crowd for reasons unknown to the officers who were responding to a potentially violent situation where guns had been brandished. Officer Fiore acted to secure the safety of the area, initiate contact with possible suspects and uncover evidence. (N.T. S. at 10-11; N.T. at 36-37).

When he made contact with Appellant, he announced himself as a police officer and commanded the fleeing individuals to stop multiple times. (N.T.S. at 8-11; N.T. at 37). As Appellant was one these individuals, it is reasonable that Officer Fiore was suspicious that a crime had been committed and there was a risk of violence. (N.T.S. at 11). Officer Fiore conducted the *Terry frisk* in a non-coercive manner, checked Appellant's name for outstanding warrants and ended the police contact without incident. (N.T.S. at 11-13; N.T. at 42-47). Based upon the testimony presented at the suppression hearing and trial, this Court finds that objective, articulable facts were

---

[4] Hereinafter "N.T.S."
[5] Hereinafter "N.T."

9

presented to support Officer Fiore's reasonable suspicion that criminal activity was afoot and that Appellant may be armed. Viewing the evidence presented on the totality of the circumstances encountered by Officer Fiore, this Court's denial of Appellant's suppression motion was proper as it was the type of scenario contemplated by *Terry*.

Regarding PO Welsh's actions, statutory authority provides that he may search a probationer or parolee based upon the reasonable suspicion standard as compared to the more stringent probable cause standard. Therefore, this Court's disposition of Appellant's suppression motion required a determination of whether PO Welsh possessed the requisite reasonable suspicion to conduct warrantless searches of Appellant's person and the vehicle he had been driving. To make this determination, this Court applied the controlling statutory authority to the totality of the circumstances facing PO Welsh.

A state parole agent's authority under the circumstances encountered in the instant case is governed by 61 Pa.C.S. §6153 – "Supervisory relationship to offenders." The specific sections of the statute that apply to the conduct of PO Welsh reads as follows:

**(d) Grounds for personal search of offender.--**

(1) A personal search of an offender may be conducted by an agent:

(i) if there is a reasonable suspicion to believe that the offender possesses contraband or other evidence of violations of the conditions of supervision;

(ii) when an offender is transported or taken into custody; or

(iii) upon an offender entering or leaving the securing enclosure of a correctional institution, jail or detention facility.

(2) A property search may be conducted by an agent if there is reasonable suspicion to believe that the real or other property in the possession of or

10

under the control of the offender contains contraband or other evidence of violations of the conditions of supervision.

(3) Prior approval of a supervisor shall be obtained for a property search absent exigent circumstances. No prior approval shall be required for a personal search.

61 Pa.C.S.A. § 6153(d)(1)-(3).

As a general principle, a parolee has a diminished expectation of privacy by virtue of their status as the assumption of the institution of parole is that the parolee is more likely than the ordinary citizen to violate the law; therefore, reasonable suspicion to search a parolee's person or property is sufficient. Commonwealth v. Smith, 85 A.3d 530, 535 (Pa. Super. 2014) *citing* Commonwealth v. Colon, 31 A.3d 309, 315 (Pa. Super. 2011) *quoting* Commonwealth v. Hunter, 963 A.2d 545, 551–52 (Pa. Super. 2008). This rule is also provided by statute. The applicable statute set forth above, delineates the parameters of a state parole agent's authority: he may conduct a search of a parolee's property "upon reasonable suspicion that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6153(d)(2). The statute also provides a list of factors for consideration when determining whether such reasonable suspicion exists:

(6) The existence of reasonable suspicion to search shall be determined in accordance with constitutional search and seizure provisions as applied by judicial decision. In accordance with such case law, the following factors, where applicable, may be taken into account:

    (i)     The observations of agents.
    (ii)    Information provided by others.
    (iii)   The activities of the offender.
    (iv)   Information provided by the offender.
    (v)    The experience of agents with the offender.
    (vi)   The experience of agents in similar circumstances.
    (vii)  The prior criminal and supervisory history of the offender.

11

(viii)    The need to verify compliance with the conditions of supervision. (61 Pa.C.S.A. § 6153(d)(6).)

An examination of the evidence presented by the Commonwealth at the suppression hearing, as applied to the factors listed above, leads this Court to find that the requisite reasonable suspicion of a parole violation was present in view of the totality of the circumstances surrounding PO Welsh's encounter with Appellant.

Appellant asked PO Welsh to retrieve his wallet from his pocket and check his identification so he could move along quicker. (N.T.S. at 12, 48; N.T. at 154). When PO Welsh opened the wallet he saw a paper he recognized to be a Pennsylvania Board of Probation and Parole Form 348 which are the instructions given to a parolee. (N.T.S. at 49; N.T. at 154-155). At this point in time PO Welsh knew Appellant was on parole in a high crime/high drug area, and he had been running from an area of a reported crowd disturbance that included firearms. It is noteworthy that PO Welsh testified that the state does not permit parolees to live in Hall Manor, the scene of the police incident, without special permission. (N.T.S. at 153). Appellant was present in this area at 11:43 at night. Regarding this fact, PO Welsh stated that depending upon a parolee's employment situation, parolees have a curfew. (N.T.S. at 55; N.T. at 157). Therefore, based upon his suspicion of a parole violation, he asked Appellant to turn around for the purposes of a pat-down search to determine compliance with any conditions of supervision. Appellant complied without resistance. (N.T.S. at 51; N.T. at 156-157).

Reviewing the factors considered by PO Welsh, this Court finds that he properly exercised his authority as a parole officer. Appellant was running from the area of a reported mob of people some of whom may have been armed. Once PO Welsh

12

discovered Appellant was under state supervision the actions of Appellant and surrounding the encounter provided enough reasonable suspicion to pat him down pursuant to 61 Pa.C.S. §6153(d).

During the search, PO Welsh discovered marijuana in the pocket of the hooded sweatshirt. (N.T.S. at 50-52; N.T. at 156-157). Although the contraband would have likely been treated as a technical violation of Appellant's parole, it sufficed as reasonable enough suspicion under the circumstances for PO Welsh to investigate Appellant further. (N.T. at 160). A continued search of Appellant's person revealed the car key and fob. (N.T.S. at 52; N.T. at 161-162). He activated the key fob and discovered that it was connected to a nearby Hyundai automobile. (N.T.S. at 52-53; N.T. at 161). Based on these additional facts, PO Welsh place Appellant in handcuffs to keep him from running while he continued his search. (N.T.S. at 52; N.T. at 160). The search revealed items that turned out to be crack cocaine and heroin which were subsequently confiscated by police. (N.T.S. 53-62; N.T. at 166-170).

With respect to Appellant's challenge to the search of the car, a factor that strongly supports PO Welsh's claim of reasonable suspicion is that the car key and fob were found on Appellant's person. Once the fob was activated, it unlocked a vehicle approximately 15 feet from where he was stopped by police running in the direction of the parked car when fleeing an unruly crowd where guns had reportedly been brandished. PO Welsh had already found contraband on Appellant's person and the key fob connected with the car he searched. Then, Appellant was evasive about the ownership of the car connected to the fob and completely lied about its location. Given PO Welsh's 7 years' experience with every type of parolee, the totality of the

13

circumstances supported a reasonable suspicion that additional parole violations may be uncovered upon a search of the vehicle. As stated above, the statute which provides PO Welsh with the authority to search the person and property of a parolee "upon reasonable suspicion that the real or other property in the possession of or under the control of the offender contains contraband or other evidence of violations of the conditions of supervision." 61 Pa.C.S. § 6153(d)(2).

Accordingly, this Court finds that Appellant's suppression motion with respect to PO Welsh's search of his person and the vehicle were properly denied. It is clear from the record that PO Welsh was only required to have a reasonable suspicion to search his person for possible parole violations as Appellant was under state supervision; such reasonable suspicion existed under the circumstances. The personal search resulted in additional factors in support of a search of the vehicle.

Appellant also claims that this Court erred when it denied his challenge made during jury selection pursuant to Batson v. Kentucky.[6] The Batson challenge was based on the Commonwealth's striking of three jurors based on race as they were African-Americans. Appellant claimed that the peremptory challenges to Juror Numbers 414, 166, and 112 were racially motivated. This Court finds that Appellant's claim is without merit.

The Superior Court has recently provided a concise and cogent explanation of the principles espoused by the U.S. Supreme Court in Batson.

> "Batson and its progeny established a three-part inquiry for evaluating a claim of racial discrimination in jury selection.

---

[6] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

14

> [T]he [movant] has to initially establish a *prima facie* showing that the circumstances give rise to an inference that the [opposing party] struck one or more prospective jurors on account of race. If the *prima facie* showing is made, the burden shifts to the [opposing party] to articulate a race-neutral explanation for striking the juror(s) at issue. The trial court ultimately makes a determination of whether the [movant] has carried [the] burden of proving purposeful discrimination.

> *Commonwealth v. Sanchez,* 614 Pa. 1, 36 A.3d 24, 44 (2011), *cert. denied, Sanchez v. Pennsylvania,* —— U.S. ——, 133 S.Ct. 122, 184 L.Ed.2d 58 (2012).

> The requirements for a *prima facie Batson* showing are well settled.

> Generally, in order ... to satisfy the first requirement of demonstrating a *prima facie Batson* claim, [the movant] must establish that [he or she] is a member of a cognizable racial group, that the [opposing party] exercised peremptory challenges to remove from the venire members of [his or her] race, and that other relevant circumstances combine to raise an inference that the [opposing party] removed the jurors for racial reasons. Whether the [movant] has carried this threshold burden of establishing a *prima facie* case should be determined in light of all the relevant circumstances. *Commonwealth v. Ligons,* 601 Pa. 103, 971 A.2d 1125, 1142 (2009)."

Commonwealth v. Thompson, 106 A.3d 742, 751 (Pa. Super. 2014).

In the instant matter, Appellant's counsel preserved his challenge for the record. (N.T. at 12). Accordingly, this Court conducted an inquiry to determine whether defense counsel made a *prima facie* Batson claim and then required the Commonwealth to respond and demonstrate that the peremptory challenges were exercised for race-neutral reasons. (N.T. at 12-19). This Court ultimately granted the Batson challenge as to two of the Commonwealth's first three peremptory challenges and seated the stricken jurors.

On appeal though, Appellant states his issue as follows: "...the Commonwealth struck African- American **jurors** based on race." *See* Concise Statement of Matters Complained of on Appeal #2 (emphasis added). The use of "jurors" in the plural form indicates that Appellant is seeking review of this Court's decision on all of the stricken

15

jurors. However, as Appellant's request was granted as to Juror No. 116 and Juror No. 112, this Court must assume that Appellant is only seeking review of the denial of the Batson challenge only as to Juror No. 414. Logic would dictate that Appellant is not challenging this Court's ruling in his favor with respect to the other two jurors.

Regarding Juror No. 414, the reason given by the Commonwealth for its peremptory challenge was that the individual had a criminal record in the State of New Jersey for a violation of "US insurance law or refusal of credible fear" which was apparently disclosed by the prospective juror in his questionnaire. (N.T. at 13-14). Pursuant to Pennsylvania law, the criminal record would disqualify him to serve on a jury. *See* 42 Pa.C.S. §4502; Commonwealth v. Kelly, 415 Pa.Super. 248, 609 A.2d 175 (1992). Therefore, Appellant's claim on this issue is without merit and this Court's ruling should stand.

Appellant also challenges the sentence imposed by this Court. The law provides that a sentencing court is vested with broad discretion in imposing a sentence, and the court's judgment of sentence will not be disturbed on appeal absent a manifest abuse of that discretion. Commonwealth v. Dutter, 617 A.2d 330, 331 (Pa. Super. 1992) (citations omitted); Commonwealth v. Perry, 32 A.3d 232 (Pa. 2011). This standard of review recognizes that the sentencing court is in the best position to weigh the various factors involved in sentencing determinations, such as defendant's character, displays of remorse or indifference, and the nature and effect of the crimes. Commonwealth v. Canfield, 639 A.2d 46, 50 (Pa. Super. 1994). A trial court must follow the general principal that the sentence imposed is consistent with the need to protect the public, the gravity of the offenses as they relate to the impact on the life of the victims and on the

community, and the rehabilitative needs of the defendant. 42 Pa.C.S. § 9721(b). When appealing the discretionary aspects of a sentence, a defendant must establish that there is a substantial question that the sentence imposed was improper under the sentencing guidelines. Commonwealth v. Mouzon, 579 Pa. 419, 425, 812 A.2d 617, 621 (2002); 42 Pa.C.S. § 9781(b).

In the instant matter, Appellant was convicted of two misdemeanor drug possession charges in violation of Section 780-113(a)(16) of the Controlled Substance, Drug Device and Cosmetic Act[7]. As Appellant had prior convictions of record for violations of Section 780-113(a)(16), this Court was statutorily authorized to impose a term of incarceration of up to three (3) years for each charge. See 35 P.S. §780-113(b). This Court imposed an aggregate term of incarceration of 1 year, 4 months to 2 years, 8 months or, less than half of what may have been imposed. Additionally, this Court provided Appellant an opportunity to address the court and considered the factors presented by defense counsel and the Commonwealth when fashioning an appropriate sentence. (Notes of Testimony, Sentencing, 10/17/14 at 2-7). Of note is Appellant's extensive criminal history involving illegal drug possession and sales and the fact that he was on parole at the time of the arrest which lead to the instant convictions. (N.T., Sentencing at 3; 7-8). In view of the circumstances of Appellant's crimes and the other factors a sentencing Court may and should consider when fashioning a sentence, the term of incarceration is far from excessive and hopefully will serve the purpose of deterring similar behavior in the future as intended by the law.

---

[7] 35 P.S. §§ 780-101 to 780-144.

17

Appellant's final claim of error is a challenge to the weight of the evidence. With respect to a weight of the evidence challenge, our Supreme Court has stated that:

> A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question whether the verdict is against the weight of the evidence. The fact finder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. Thus, the trial court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings.

Commonwealth v. Weathers, 95 A.3d 908 (Pa. Super. 2014) citing Commonwealth v. Diggs, 597 Pa. 28, 949 A.2d 873, 879–80 (Pa. 2008) (internal citations omitted). When a defendant motions for a new trial based on a weight of the evidence claim, he concedes that sufficient evidence exists to sustain the jury's verdict. Commonwealth v. Rosetti, 863 A.2d 1185, 1191-1192 (Pa. Super. 2004).

Appellant was convicted of simple possession for cocaine and heroin, respectively. To be convicted of such a charge, the Commonwealth is required to prove that a defendant had the "the ability to exercise a conscious dominion over the illegal substance: the power to control the contraband and the intent to exercise that control." Commonwealth v. Macolino, 503 Pa. 201, 206, 469 A.2d 132, 134 (1983). If actual possession cannot be shown, constructive possession may be established to prove the case. Commonwealth v. Valette, 531 Pa. 384, 388-89, 613 A.2d 548, 550 (1992). As the Supreme Court has noted:

18

"[c]onstructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement." *Commonwealth v. Mudrick,* 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). The existence of constructive possession of a controlled substance is demonstrated by "the ability to exercise a conscious dominion over the illegal substance: the power to control the [illegal substance] and the intent to exercise that control." *Valette,* 531 Pa. at 388, 613 A.2d at 550 (quoting *Commonwealth v. Macolino,* 503 Pa. 201, 206, 469 A.2d 132, 134 (1983)). An "intent to maintain a conscious dominion may be inferred from the totality of the circumstances." *Macolino,* 503 Pa. at 206, 469 A.2d at 134. Thus, circumstantial evidence may be used to establish constructive possession of the illegal substance. *Id.*

Commonwealth v. Johnson, 611 Pa. 381, 407, 26 A.3d 1078, 1093-94 (2011).

In the instant case, Appellant lied about the car key and fob as well as the ownership and location of the connected vehicle. The drugs at issue were found in the car connected to that key and fob. When Officer Fiore interviewed Appellant at central booking after being ***Mirandized*** twice, Appellant told him that the drugs found in the car for which he had the key were not his sister's but did not deny they were his. He also made the same statement in writing. Ample evidence of record was presented by the Commonwealth to permit the jury to infer constructive possession of the cocaine and heroin found in the vehicle to render a verdict that does not shock the conscience of this Court. Accordingly, Appellant's claim regarding the weight of the evidence fails.

RICHARD A. LEWIS, PRESIDENT JUDGE

Memorandum date:

May _____ , 2015

19

DISTRIBUTION: 5-15-15 @ 3³⁰pm
Christopher Jason, Esq., Deputy District Attorney  /0
Ryan Lysaght, Esq., Asst. Public Defender  / 0
Clerk of Courts  KC
Superior Court Prothonotary  mail
Court Admin. – Criminal  / 0
FILE – Judge Lewis  / 0

20