J-S40008-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANGEL REYES | : | |
| | : | |
| Appellant | : | No. 3358 EDA 2015 |

Appeal from the Judgment of Sentence October 21, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0013835-2012,
CP-51-CR-0013836-2012

BEFORE:   OTT, DUBOW, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:            **FILED SEPTEMBER 18, 2017**

Appellant Angel Reyes appeals from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County after a jury convicted Appellant of Aggravated Assault, Possession of a Controlled Substance with Intent to Deliver, Knowing and Intentional Possession of a Controlled Substance, Possession of Drug Paraphernalia, and Resisting Arrest.  After careful review, we affirm.

On October 31, 2012, at approximately 10:30 p.m., Philadelphia Police Officers Michael Berkery and Ryan Pownall were on a routine patrol in a high crime area of the 4400 block of Frankford Avenue in Philadelphia.  Officer Pownall observed Appellant walking the same direction on Frankford Avenue

_____

[*] Former Justice specially assigned to the Superior Court.

and became concerned when he noticed a heavy bulge swinging back and forth in the left pocket of Appellant's cargo pants. The officers believed Appellant was concealing a gun because the bulge in Appellant's pocket appeared to be of the same size as a firearm and swung as the officers expected a firearm would move. The officers asserted that the guns are frequently concealed by persons in their front pocket when engaging in criminal activity. Both officers were aware that multiple armed robberies had been committed in this area.

The officers pulled over their patrol car and Officer Pownall walked towards Appellant on foot. As Officer Pownall approached, Appellant took off his headphones, wrapped them up, and placed them in his pocket. When Officer Pownell reached Appellant, Officer Pownell asked him if he was armed with a gun. Appellant ignored the officer's question and continued walking.

At that point, Officer Pownell feared for his safety and reached to touch the portion of Appellant's pocket where he believed a firearm was concealed. When Officer Pownell touched this pocket, Appellant slapped his hand away. Officer Pownell again inquired whether Appellant had a weapon and again reached towards Appellant's pocket. Appellant pushed Officer Pownell backwards and caused him to stumble. Officer Pownall grabbed Appellant's jacket and Appellant attempted to wrestle out of his grip.

As the interaction between Officer Pownell and Appellant became increasingly physical, Officer Berkery exited his vehicle and threatened to tase Appellant if he continued to fight. When Appellant continued to fight,

Officer Berkery tried unsuccessfully to tase Appellant. When the taser leads did not connect, Appellant attempted to take the taser from Officer Berkery. Officer Berkery then started to punch Appellant, who bit Officer Berkery. Appellant continued to punch, shove, kick, and bite the officers.

When the officers were finally able to subdue Appellant after backup arrived and placed him under arrest, they discovered Appellant was in possession of twenty-three blue tinted bags of cocaine, a bottle of lidocaine, a digital scale, and numerous new and unused blue-tinted packets. The officers determined that the scale was approximately the same size and shape as a firearm. As a result of this incident, both officers were treated for bite wounds and Officer Pownell suffered tears to his rotator cuff and labrum. After undergoing surgery, Officer Pownell was out of work for nine months and still had pain at the time of trial.

Appellant filed a motion to suppress the cocaine and drug paraphernalia, asserting that the officers did not have the requisite suspicion to stop and arrest him. After the trial court denied this motion, Appellant proceeded to a jury trial in which he testified on his own behalf. On May 6, 2015, a jury convicted Appellant of aggravated assault as a first-degree felony (as to Officer Pownall), two counts of aggravated assault as second-degree felonies (as to Officers Pownall and Berkery), resisting arrest, possession with intent to deliver a controlled substance, knowing or intentional possession, and possession of drug paraphernalia. On October 21, 2015, the trial court imposed the following sentences:

Count 1: Aggravated Assault – Minimum four (4) years state term incarceration to Maximum ten years (10), followed by ten (10 years probation);

Count 2: PWID – Minimum two (2) years [and] six (6) months state term incarceration to Maximum five (5) years, followed by (5) years reporting probation to run consecutive to Count 1;

Count 4: Use of Drug Paraphernalia – Minimum of one (1) year state term incarceration to Maximum two (2) years, to run consecutively to Count 2;

Count 7: Resisting Arrest – Minimum one (1) year state term incarceration to Maximum two (2) years, to run consecutively to Count 4.

Trial Court Opinion, 11/10/16, at 3. All other charges merged for sentencing purposes. As a result, Appellant received an aggregate sentence of 8½ to 19 years' imprisonment to be followed by 15 years probation.

On October 28, 2015, Appellant filed a timely motion for reconsideration of his sentence, which the trial court subsequently denied on October 30, 2015. On November 5, 2015, Appellant filed a notice of appeal. On November 9, 2015, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 9, 2015, Appellant filed a *pro se* PCRA petition, which the trial court dismissed without prejudice given the pendency of the current appeal. On December 23, 2015, the trial court again directed Appellant to file a Rule 1925(b) statement. On January 6, 2016, Appellant's counsel filed a motion to withdraw, which this Court granted. On January 22, 2016, the trial court appointed Erin Boyle, Esq. to represent Appellant. On March 18, 2016, the

trial court reiterated its request for Appellant to file a Rule 1925(b) statement. On April 7, 2016, Atty. Boyle filed a Rule 1925(b) statement on Appellant's behalf.

Appellant raised the following issues for our review on appeal:

i.      Did the trial court err in failing to grant Appellant's motion to suppress physical evidence where the arresting officers stopped and searched Appellant without reasonable suspicion, probable cause, or a search warrant to do so[?]

ii.     Did the jury err in finding Appellant guilty of Aggravated Assault (F1), two counts of Aggravated Assault (F2), Possession with the Intent to Deliver, and Resisting Arrest where there was insufficient evidence that Appellant was guilty of each element of all of the crimes?

iii.    Did the jury err in finding Appellant guilty of A/A (F1), A/A (F2), PWID, and R/A as the verdict was against the weight of the evidence[?]

iv.     Did the trial court err when it only emphasized Appellant's self-interest in testifying in the jury instructions[?]

v.      Did the trial court abuse its discretion when it sentenced Appellant to an excessive and severe sentence[?]

Appellant's Rule 1925(b) statement, at 1.

First, Appellant claims the trial court erred in denying his motion to suppress physical evidence. When reviewing a trial court's denial of a motion to suppress, our standard of review is as follows:

our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. [*Commonwealth v.*] *Woodard*, [634 Pa. 162,] 129 A.3d [480,] 498 [(2015)]. We are bound by the suppression court's factual findings so long as they are supported by the record; our

standard of review on questions of law is *de novo*. **Commonwealth v. Galvin**, 603 Pa. 625, 985 A.2d 783, 795 (2009). Where, as here, the defendant is appealing the ruling of the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted. [**Commonwealth v.**] **Poplawski**, [634 Pa. 517,] 130 A.3d [697,] 711 [(2015)]. Our scope of review of suppression rulings includes only the suppression hearing record and excludes evidence elicited at trial. **In the Interest of L.J.**, 622 Pa. 126,79 A.3d 1073, 1085 (2013).

**Commonwealth v. Yandamuri**, ___Pa.___, 159 A.3d 503, 516 (2017).

The Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures. **Commonwealth v. Lyles**, 626 Pa. 343, 350, 97 A.3d 298, 302 (2014). Search and seizure jurisprudence defines three levels of interaction between citizens and police officers and requires different levels of justification based upon the nature of the interaction. **Commonwealth v. Tam Thanh Nguyen**, 116 A.3d 657, 664 (Pa.Super. 2015).

These categories include (1) a mere encounter, (2) an investigative detention, and (3) custodial detentions. The first of these, a "mere encounter" (or request for information), which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or 'custodial detention" must be supported by probable cause.

**Commonwealth v. Baldwin**, 147 A.3d 1200, 1202–1203 (Pa.Super. 2016) (citation omitted).

- 6 -

Appellant argues that he was illegally seized when Officer Pownell touched his pocket in an attempt to perform a frisk. The parties agree that Officer Pownell's protective frisk was part of an investigative detention, but dispute whether it was justified by reasonable suspicion.

> The Fourth Amendment permits brief investigative stops ... when a law enforcement officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity." ***Navarette v. California****,* ––– U.S. ––––, 134 S.Ct. 1683, 1687, 188 L.Ed.2d 680 (2014). It is axiomatic that to establish reasonable suspicion, an officer "must be able to articulate something more than an inchoate and unparticularized suspicion or hunch." ***United States v. Sokolow****,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) (internal quotation marks and citation omitted). Unlike the other amendments pertaining to criminal proceedings, the Fourth Amendment is unique as it has standards built into its text, *i.e.,* reasonableness and probable cause. ***See generally*** U.S. Const. amend. IV. However, as the Supreme Court has long recognized, ***Terry v. Ohio****,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) is an exception to the textual standard of probable cause. ***Florida v. Royer****,* 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983). A suppression court is required to "take[ ] into account the totality of the circumstances—the whole picture." ***Navarette****, **supra*** (internal quotation marks and citation omitted). When conducting a ***Terry*** analysis, it is incumbent on the suppression court to inquire, based on all of the circumstances known to the officer *ex ante,* whether an objective basis for the seizure was present. ***Adams v. Williams****,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). In addition, an officer may conduct a limited search, *i.e.,* a pat-down of the person stopped, if the officer possesses reasonable suspicion that the person stopped may be armed and dangerous. ***United States v. Place****,* 462 U.S. 696, 702, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (citation omitted).

***Commonwealth v. Carter****,* 105 A.3d 765, 768–69 (Pa.Super. 2014) (*en banc*) (footnote omitted).

In **Carter**, this Court reversed the trial court's grant of Carter's motion to suppress, finding his Fourth Amendment rights were not violated when the arresting officer seized Carter and conducted a limited pat-down after observing him in a high crime area at night with a weighed and angled bulge in his coat pocket. This Court reasoned that the officer had reasonable suspicion to stop and frisk Carter where the entire basis for the stop was the officer's suspicion that he was armed and dangerous. Similarly, in **Commonwealth v. E.M.**, 558 Pa. 16, 735 A.2d 654, 662 (1996), the Supreme Court found that it was permissible for the arresting officer to subject E.M. to a pat-down for weapons as he had a particularized fear that E.M. was armed and dangerous after observing a bulge in E.M.'s pocket that was characteristic of a semi-automatic weapon.

In the same manner, in this case, when the officers encountered Appellant at midnight in a high crime area, they noticed a large rectangular bulge in his pocket. Officer Berkery testified that, based on his twelve years of experience as a police officer and in his own daily experience with firearms, the bulge in Appellant's pocket was consistent with the shape and movement of a firearm. Officer Berkery testified that while off-duty, he carries a personal gun in his pocket, which swings in the same manner. Moreover, the officers had reason to be on the lookout for firearms, as they had been assigned to this specific area as it had been the location of several armed robberies. Viewing the totality of the circumstances, we agree with the trial court's finding that the officers had reasonable suspicion to believe

that Appellant was armed and dangerous. Accordingly, we conclude the trial court did not err in denying Appellant's suppression motion.

In Appellant's second issue on appeal, he argues that there was insufficient evidence to support all of his convictions. However, we find Appellant waived his sufficiency challenges due to his vague 1925(b) statement.

> The Pennsylvania Supreme Court has explained that Rule 1925 is a crucial component of the appellate process, which "is intended to aid trial judges in identifying and focusing upon those issues which the parties plan to raise on appeal." *Commonwealth v. Lord*, 553 Pa. 415, 719 A.2d 306, 308 (1998). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is pertinent to those issues." *In re Estate of Daubert*, 757 A.2d 962, 963 (Pa.Super. 2000). "In other words, a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all." *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa.Super. 2001).
>
> "In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient." *Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa.Super. 2013) (citing *Commonwealth v. Gibbs*, 981 A.2d 274, 281 (Pa.Super. 2009)). "Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt." *Gibbs*, 981 A.2d at 281.

*Commonwealth v. Freeman*, 128 A.3d 1231, 1248 (Pa.Super. 2015).

In his Rule 1925(b) statement, Appellant argues that there was insufficient evidence to support his convictions for aggravated assault (three

counts under different subsections of the crime code), possession with intent to deliver a controlled substance, and resisting arrest. Appellant does not specify which elements he wished to challenge. As this statement is too vague to warrant appellate review, we find this issue waived.

In the same manner, Appellant has also waived his third issue on appeal in which he argues that "the jury err[ed] in finding Appellant guilty of A/A (F1), A/A (F2), PWID, and R/A as the verdict was against the weight of the evidence." Appellant's 1925(b) statement, at 1. For the same reasons, Appellant's vague concise statement does not identify the specific issues to be raise on appeal and is "the functional equivalent of no Concise Statement at all." **Dowling**, 778 A.2d at 686. Thus, we need not review this issue further.

Fourth, Appellant argues that the trial court erred in "emphasizing Appellant's self-interest in testifying in the jury instructions." Appellant's 1925(b) statement, at 1. However, this claim is also waived as defense counsel never made a specific objection to this instruction and raises this claim for the first time on appeal. Our rules of criminal procedure require that "[n]o portions of the charge nor omissions from the charge may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate." Pa.R.Crim.P. 647(C). **See also Commonwealth v. Pressley**, 584 Pa. 624, 628, 887 A.2d 220, 224 (2005) (holding that "[t]he pertinent rules [of Criminal Procedure] ... require a specific objection to the charge or an exception to the trial court's ruling on a proposed point

- 10 -

to preserve an issue involving a jury instruction"). Accordingly, because this claim was not preserved for our review, it is waived.

Fifth, Appellant asserts that the trial court abused its discretion in imposing an excessive sentence as several of his individual sentences exceeded the guideline ranges. It is well-established that "[a] challenge to the discretionary aspects of sentencing does not entitle an appellant to review as of right." *Commonwealth v. Bynum-Hamilton*, 135 A.3d 179, 184 (Pa.Super. 2016).

We find Appellant's specific sentencing claims are waived as Appellant raised them for the first time in his appellate brief. Our rules of appellate procedure provide that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302. Thus, challenges to the discretionary aspects of sentence must be raised at sentencing or in a post-sentence motion. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa.Super. 2003).

Appellant did file a motion for reconsideration, but simply indicated that Appellant felt his sentence was "excessive" but did not state a specific claim of error. Motion for Reconsideration, 10/28/15, at 1. In his 1925 statement, Appellant claimed the trial court "sentenced Appellant to an excessive and severe sentence." Appellant's 1925(b) statement, at 1. Based on these vague challenges, the trial court concluded in its 1925(a) opinion that it could not review Appellant's mere claim of excessiveness without a more specific claim for a source of error. "When a court has to

guess what issues an appellant is appealing, that is not enough for meaningful review." ***Mann***, 820 A.2d at 794 (citation omitted). Appellant's failure to set forth a specific objection to his sentence deprived the sentencing judge an opportunity to consider Appellant's specific claims. Thus, this claim is also waived.

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Dubow, J. joins the memorandum.

Ott, J. files a concurring statement.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/18/2017